UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------X
POLA MARITIME LTD.                    :
                                      :
            Plaintiff,                :
                                      :          IN ADMIRALTY
      - against -                     :
                                      :          17-cv_____
AGRIBUSINESS UNITED DMCC,             :
AGRIBUSINESS UNITED SAVANNAH          :
LOGISTICS LLC,                        :
SONADA AGRO LIMITED,                  :
SONADA AGRO LIMITED (UK) LLC,         :
SONADA NUTRITION COMPANY and          :
ABDERRAHIM ABOU EL OUAFA              :
                                      :
            Defendants.               :
-----------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, POLA MARITIME LTD. ("Pola" or "Plaintiff"), by and through its attorneys,

Tisdale Law Offices, LLC, as and for its Verified Complaint against the Defendants,

AGRIBUSINESS UNITED DMCC,  AGRIBUSINESS  UNITED  SAVANNAH  LOGISTICS

LLC, SONADA  AGRO  LIMITED,  SONADA  AGRO  LIMITED  (UK) LLC,  SONADA

NUTRITION  COMPANY,  and  ABDERRAHIM  ABOU  EL OUAFA  ("Defendants"),  alleges,

upon information and belief, as follows:

**JURISDICTION AND VENUE**

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

2.      As will be discussed more fully herein, the pending London Maritime Arbitration

Association ("LMAA") proceeding arises out of Defendants' breach of a maritime contract,

specifically a charter party dated November 20, 2015 between Pola and Agribusiness United.

3.     Venue is proper in this district because there is or will be during the pendency of this action property due and owing to the Defendants within this district and in the hands of a non-party garnishee, namely Arm & Hammer Animal Nutrition, Arm & Hammer, LLC, or any other variant of Arm & Hammer which may be holding property subject to this maritime attachment, as will be more fully discussed herein.

**PARTIES**

4.     Pola Maritime Ltd. is duly incorporated in Cyprus with a registered address of Agiou Pavlou, 15, Ledra House Agios Andreas Nicosia, 1105, Cyprus.

5.     Agribusiness United Savannah Logistics LLC ("Agribusiness Savannah") is a Florida limited liability corporation with an office and place of business in Savannah, GA.

6.     Agribusiness United DMCC (Dubai) LLC ("Agribusiness DMCC") is a foreign limited liability company with an office and place of business in Savannah, GA.

7.     Sonada Agro Limited is believed to be organized under the laws of the United Kingdom with a registered address of 23 Havelock Road, Hastings, East Sussex, England,  YN31 1BP.

8.     Sonada Agro Limited (UK) LLC is a foreign limited liability company registered with the State of Minnesota and authorized to do business in that state.  The "Home Business Name" on file with the State of Minnesota is "Sonada Agro Limited."   Business addresses in Minnesota, Florida, and Georgia are listed on the Minnesota Secretary of State  business filings website.  See **Exhibit 1.**

9.     Sonada Nutrition Company is a domestic business corporation registered with the State of Minnesota and authorized to do business in that state.  The mailing address for Sonada

Nutrition Company is in Morocco and the principal executive office address is listed in Savannah, GA.  See **Exhibit 1.**

10.     Abderrahim Abou el Ouafa is the owner / principal behind all of the other named Defendants and all Agribusiness United entities.  He is believed to reside in the United Arab Emirates.

**UNDERLYING FACTS AND LONDON MARITIME ARBITRATION PROCEEDINGS**

11.     By a voyage charter party on an amended Norgrain 89 Form dated November 20, 2015, Pola as disponent owner,[1] chartered to Agribusiness United  Savannah Logistics LLC the M/V N SCHELDE for a voyage carrying 36,000 mts  +/- 10% mixed agricultural cargoes from 1 or 2 safe ports up-river Argentina to 2 safe ports (1 safe berth each) Atlantic Morocco.

12.     Agribusiness Savannah was identified as the Charterer in the November 20, 2015 charter party.  However, Agribusiness Savannah concluded the November 20, 2015 charter party as an undisclosed agent of Agribusiness United DMCC of Dubai ("Agribusiness DMCC").  This is the issue in the now pending LMAA arbitration proceeding.

13.     The parties concluded three fixtures together and for each of the fixtures, the Agribusiness entities acted through the same brokers, Bonum Marine, Inc.

14.     The first of the three fixtures identified Agribusiness Savannah as the Charterer.  However, when Pola issued its freight invoice in the name of Agribusiness Savannah, the brokers requested that the invoice be re-issued to Agribusiness DMCC.  Agribusiness DMCC then paid this freight on or about October 5, 2015.

---

[1] A disponent owner of a vessel is a person or company which has commercial control over a vessel's operation without owning the vessel.  In this case, Pola chartered the Vessel from the "head owner" of the Vessel.    The "head owner" of the M/V N SCHELDE ("Vessel") is Schifffahrtsgesellschaft MS "N Schelde" gmbH & Co. KG.

15.     The brokers also advised that payment of the freight invoices for the second of the three fixtures should also be directed to Agribusiness DMCC.   Agribusiness DMCC again satisfied these invoices despite the fact that it was not identified in the charter party as the charterer.

16.     On or about November 13, 2015, Agribusiness DMCC nominated the M/V N SCHELDE as the performing vessel under certain sales contracts which Agribusiness DMCC entered into with Agroglobal S.A. ("Agroglobal").

17.     Upon information and belief, the sales contracts identified Agribusiness DMCC as the buyer on FOB terms such that Agribusiness DMCC would have to nominate the performing vessel.   As with the previous fixtures, Pola issued its invoices to Agribusiness DMCC and such payments as have been received in respect of these invoices were paid by Agribusiness DMCC.

18.     Pursuant to Charterers' (Agribusiness Savannah / Agribusiness DMCC) instructions, the Vessel loaded various cargoes of corn and soybean meal at San Lorenzo, Argentina.   Charterers caused fifteen (15) bills of lading to be issued on behalf of head owners for various cargoes of corn and soybean meal, of which ten (10) so far have subsequently given rise to disputes.   References below to "bills of lading" are to those ten (10) bills.

19.     Two of the bills of lading named "Commodities S.A." as the shipper and the remainder named "Nidera S.A." as the shipper.   All of the bills of lading were consigned "to order."   Five of the bills named "Agribusiness United Afrique SARL" as the notify party and various other notify parties were named in the rest of the bills.   Agribusiness United Afrique SARL is believed to be a Moroccan affiliate of Charterers Agribusiness Savannah / Agribusiness DMCC.

20.     The bills of lading each contained or evidenced a contract of carriage between the head owners and the lawful holder of the relevant bill.   In accordance with the contracts of carriage contained in or evidenced by the bills of lading, the head owners undertook to deliver the cargoes only upon the surrender of the original bills of lading.

21.     However, in accordance with Charterers Agribusiness Savannah / Agribusiness DMCC's instructions, the Vessel discharged the cargoes recorded in the bills of lading to receivers in Agadir and Casablanca without presentation of the original bills of lading, but against letters of indemnity ("LOIs").   Clause 65 of the Charter Party provided, "IN THE EVENT THAT ORIGINAL BILLS OF LADING ARE NOT AVAILABLE AT DISCHARGE IN TIME FOR VESSELS ARRIVAL AT DISCHARGE PORT, OWNERS AGREE TO DISCHARGE, DELIVER AND RELEASE THE CARGO TO NOMINATED RECEIVERS AGAINST CHARTERERS LETTER OF INDEMNITY WORDING, SIGNED ALSO BY RCVERS AS PER OWNERS P AND I CLUB…"

22.     Pola issued a set of back-to-back LOIs in favor of head owners in exchange for compliance with the discharge orders issued by Charterers.

23.     The Master of the M/V N SCHELDE was advised by the agents at Agadir and Casablanca that the agents were being instructed directly by the Morocco affiliate of Agribusiness.

24.     The head owners discharged the cargoes recorded in the bills of lading without incident to the receivers in Agadir (from December 23, 2015 to December 27, 2015) and Casablanca (from January 3, 2016 to January 6, 2016) without presentation of the original bills of lading and against letters of indemnity.

25.     Four months later on May 9, 2016, Agroglobal arrested the M/V N SCHELDE in the United States District Court for the Eastern District of Louisiana on the basis of a claim against head owners for mis-delivery of the cargoes.

26.     Agroglobal's position can be summarized as follows: Agroglobal was at all material times the lawful holder of the bills of lading and was entitled to immediate possession of the cargoes, the cargoes were discharged to the various receivers without Agroglobal's consent and should not have been discharged without its consent, and Agroglobal now claims against head owners for mis-delivery of the cargoes in the amount of $4,395,644.61.

27.     In order to secure the release of the M/V N SCHELDE in the Eastern District of Louisiana, the head owners and Agroglobal entered into an escrow agreement to secure Agroglobal's claim.  Pursuant to that escrow agreement, the head owners paid $5.4 million into the client account of Agroglobal's English solicitors.

28.     On June 17, 2016, head owners arrested the M/V POLA ONEGA in the Eastern District of Louisiana on the basis of alleged indemnity claims against Pola under the terms of the head charter party dated June 11, 2015 and/or the Pola LOIs.  (The M/V POLA ONEGA is owned by an affiliate of Pola.)

29.     Head owners' indemnity claim against Pola was provisionally quantified at $6,187,282 including the security provided to release the Vessel from arrest, legal fees, off-hire, bunkers and owners' expenses while the Vessel was under arrest.

30.     Agroglobal commenced arbitration against head owners on May 18, 2016, serving claim submissions on June 30, 3016 in support of its mis-delivery claims.  Head Owners have subsequently settled Agroglobal's claims by payment to Agroglobal of $4,300,000 inclusive of interest and costs (i.e. $1,200,000 less than the security headowners had to pay Agroglobal to

secure release of the Vessel from arrest).   Head owners' indemnity claim against Pola accordingly can presently be quantified as $6,187,282 less $1,200,000, which equals $4,987,282.

31.     The whole chain of events described above was caused by Agribusiness United breaching its contractual obligations under the charter party with Pola and failing to pay what it owed.

**LONDON MARITIME ARBITRATION ASSOCIATION ("LMAA") PROCEEDINGS**

32.     Pola, through MFB Solicitors as counsel, commenced arbitration against Agribusiness DMCC and Agribusiness Savannah on August 23, 2016 with the service of its Notice of Commencement of Proceedings in accordance with London Maritime Arbitrators Association ("LMAA") rules.   Pola served its initial claim submission on October 7, 2016 to which Agribusiness Savannah and Agribusiness DMCC responded on November 4, 2016.

33.     Pola has also commenced arbitration proceedings against Defendants Agribusiness Savannah and Agribusiness DMCC under all these charter parties.   Attached hereto as **Exhibit 2** are the relevant Notices of Commencement of Proceedings dated September 1, 2016. Both Agribusiness Savannah and Agribusiness DMCC have appointed arbitrators in response as per the attached correspondence.

34.     Pola served claim submissions dated October 7, 2016. Agribusiness DMCC and Agribusiness Savannah (jointly) served defence and counterclaim submissions dated  November 4, 2016. Pola responded with reply and defence to counterclaim submissions dated  March 28, 2017. Agribusiness DMCC and Agribusiness Savannah (separately) served further submissions each dated May 8, 2017, which Pola responded to by further submissions dated May 25 and May 31, respectively. Agribusiness DMCC and Agribusiness Savannah have applied to the tribunal

for permission to serve further submissions, to which Pola have objected. A procedural direction from the tribunal is awaited.

35.     Given the factual background set out above Defendants Agribusiness DMCC and Agribusiness Savannah may be liable in debt and/or damages or indemnity to pay the following sums to Pola:

| | | |
|---|---|---|
| A. | Value of head owners' indemnity claim against Pola: | $4,987,282 |
| B. | Outstanding freight and demurrage: | $36,029.83 |
| C. | Interest (4.5 % compounded quarterly): | $470,305.64 |
| D. | Costs, and Attorneys' Fees awardable under English law: | $200,000 |
| E. | Total: | **$5,693,617.47** |

**ALTER EGO**

36.     Defendants Agribusiness DMCC and Savannah were / are artifices and/or shams designed to execute illegitimate purposes in abuse of the corporate formalities and the associated rights.

37.     Defendants Agribusiness DMCC and Savannah were / are used to perpetrate a fraud and their corporate forms were disregarded to the extent that the common owner Defendant Abderrahim Abou el Ouafa's personal business was transacted through these entities. The Sonada Defendants are just another instrumentality of this scheme.

**Common Offices, Directors, Corporate Structure, and Contact Information**

38.     Agribusiness DMCC, Agribusiness Savannah, and all the Sonada entities have the same common owner/ principal: Abderrahim Abouelouafa ("Mr. Abou").  Mr. Abou is the controlling interest behind all of the Agribusiness United / Sonada entities.

39.     The Arm & Hammer Animal Nutrition website indicates that "Sonada (Agribusiness United)" is the Morocco distributor for the listed Arm & Hammer products. (Attached hereto as **Exhibit 3** is a print out from the Arm & Hammer Animal Nutrition website.) The website also indicated that "Abderrahim Abou el Ouafa" is the contact person for "Sonada (Agribusiness United)" and that Mr. Abou's email address is abou@agribiz.ae.

40.     The Agribusiness website (screenshots of which are attached hereto as **Exhibit 4**) reveals that since its founding in 2010, "Agribusiness United" has been engaged in the international grain and feed trade.  No distinction is made between the variants of Agribusiness United.  Defendant Abderrahim Abou el Ouafa  is identified on the Agribusiness United website as the managing director.

41.     Apparently, Sonada holds itself out to third parties as an "Agribusiness United company."  In soliciting designs for a logo, Sonada indicated that it was an "Agribusiness United company." (**Exhibit 5**).

42.     All of the Agribusiness United entities in addition to the Defendant Sonada companies are believed to operate out of the same office address in Savannah, GA: 2 East Bryan Street, Suite 1150, Savannah, GA.

43.     "Agribusiness United" is used interchangeably in bank account documents to refer to all companies in the Agribusiness corporate web, namely, Agribusiness United DMCC, Agribusiness United Savannah Logistics LLC, and Agribusiness United North America Company, Agribusiness United Multi Commodities Inc.

44.     In addition to the same managing director / beneficial owner of the Agribusiness United corporate web, the Agribusiness United companies share numerous other common directors and employees in addition to Defendant Abderrahim Abou el Ouafa. (**Exhibit 4**.)

**Financial Dealings between the Agribusiness / Sonada Entities and Commingling of Funds**

45.     Earlier this year, Pola obtained banking records relating to the various Agribusiness United entities through an Application to Conduct Discovery for Use in Foreign Proceedings pursuant to 28 U.S.C. § 1782 granted by the United States District Court for the Southern District of Georgia, Savannah Division.  (**Exhibit 6**, docket report.)

46.     A review of these banking documents revealed a consistent pattern of Defendant Agribusiness United DMCC transferring money between the different Agribusiness United entities and maintaining minimal balances in several Agribusiness United entities.

47.     It appears that during 2015-2017, "Agribusiness United Inc.," was sending and receiving numerous money transfers.   The designation "Agribusiness United" can refer to any of the companies in the Agribusiness United stable of entities.   This includes both named Defendants Agribusiness Savannah and Agribusiness DMCC.

48.     From the banking records, it is clear that Defendant Agribusiness United DMCC uses the accounts of the other Agribusiness entities to do its owner's business.  As just one example among many, on February 17, 2015, Defendant Agribusiness United DMCC wire transferred $683,522.00 to the "Agribusiness United Inc." account at Bank of America and on February 20, 2015, an Agribusiness United wire remitted $693,745.35 to a commodity trading company, Lansing Trade Group.  Before and after that transfer Agribusiness United's account balances ranged between $5,800 and $7,700.  (See **Exhibit** 7).  The Agribusiness United entities are/ were used as pass through entities.

49.     Furthermore, the vast majority of transfers into AUNAC/Agribusiness United's account came from Defendant Agribusiness DMCC, but, once the necessary invoices were paid, the majority of the balance remaining was transferred back to Agribusiness  DMCC within just a few days, leaving a much smaller balance.  (See **Exhibit 8**).   Nearly all Agribusiness United entities are / were severely under-capitalized.  This specifically includes Defendant Agribusiness Savannah.

50.     The same is true for another Agribusiness United entity, Agribusiness United Multi Commodities's ("AUMCI") account.   AUMCI maintained balances of a few hundred dollars until Agribusiness  DMCC transferred substantial money to AUMCI's account.   Then AUMCI would pay third parties nearly all of the remitted funds.  As an example, on January 25, 2016, DMCC transferred $25,000 to AUMCI's account (which had at that time a $79.70 balance).   A few days before, AUMCI had sent a check to PMI Nutrition for the same amount. (See **Exhibit 9**.).   There was no other banking activity that month in the AUMCI account.

51.     With respect to the subject matter of the LMAA arbitration proceeding, while Agribusiness Savannah was the named Charterer for the N. SCHELDE, there appear to be no remittances made by Agribusiness Savannah for that vessel or any other vessel for that matter, based upon the Sun Trust banking documents.  This is consistent with DMCC's payment of invoices issued by Pola for the N SCHELDE which were satisfied by DMCC even though DMCC was not the named charterer in the charter party.

52.     As previously noted, in the charter party at issue, the named charterer was Agribusiness Savannah.  However, the Sun Trust banking records show balances of less than $2,000 in Savannah's account throughout the years 2015-2016.  Clearly, Savannah was in no position to satisfy the freight invoices due and owing to Pola which were in the amount of nearly

$1,000,000. This demonstrates that Defendant Agribusiness was severely undercapitalized during the operative timeframe to the events which form the basis for the LMAA proceeding.

53.     Also telling are the Defendant Agribusiness United DMCC banking records from Sun Trust bank. These bank records show that, in addition to the local account, Defendant Agribusiness United DMCC had accounts in various foreign jurisdictions. The DMCC account at Sun Trust bank had literally millions of dollars pass through it during 2015 and 2016. The overwhelming majority of checks written on DMCC's account were paid to the other Agribusiness entities. (See examples in **Exhibit 10**).

54.     Defendant Agribusiness United DMCC appears to have solely funded transactions of both various Agribusiness United entities, as it also had done for Defendant Agribusiness Savannah.

55.     The Bank of America and Sun Trust bank records also establish that in early 2016, when the Agribusiness creditors began piling up, the authorized signatories for all of the different Agribusiness accounts were changed. In each instance, Defendant Abderrahim Abou el Ouafa  is identified as the only, or one of two, signatories on the accounts. (See **Exhibit 11**). Defendant Abderrahim Abou el Ouafa is, for all intents and purposes, Agribusiness.

56.     In a specific example of disregard of the corporate veil / commingling funds by Agribusiness United, Defendant Agribusiness Savannah guaranteed Sonada Agro Ltd.'s charter party obligations. (**Exhibit 12**.) Mr. Abou signed the guaranteed on behalf of both companies.

57.     During the month when Mr. Abou executed the guarantee between Agribusiness Savannah and Sonada, Agribusiness Savannah had no more than $78 in its bank account. (**Exhibit 13**.) $78 does not even come close to covering Sonada's obligations under that charter party. The charter party at issue in that case set forth a rate of $32.50 per metric ton of cargo

loaded where up to 13,422 metric tons of cargo could be loaded.  Thus, Sonada/ Agribusiness Savannah could have been responsible for at least $436,215 exclusive of any other charter party obligations.  The $78 in the Agribusiness Savannah bank account was far below an amount which could cover that guaranteed contractual obligation.

58.     Thus, the charter party which Defendant Agribusiness United Savannah guaranteed concerned obligations which far exceeded the amount of available to Agribusiness Savannah in its bank account.  (**Exhibit 14**.)  This is another example of commingling of funds and gross undercapitalization.

59.     As proof that Defendant Abderrahim Abou el Ouafa used the Agribusiness United entities as his personal cash register, the bank records of Agribusiness United indicate that Mr. Abou used the check card associated with the account to pay for luxury apartments and used the account to pay for a luxury spa and resort in California.  (**Exhibit 15**.)

60.     The Agribusiness United / Sonada web of corporate entities are nothing more than a shell game designed and used with the intent to defraud creditors.  Adherence to the corporate form would work an injustice on Pola.  Pola seeks to pierce the corporate veil of Sonada / Agribusiness United to obtain security for its pending LMAA proceeding.

61.     Upon information and belief, Defendants commingle funds and act as paying agents on behalf of each other.  As between Sonada, Agribusiness Savannah and Agribusiness DMCC, there is, and has been a commingling of funds and transfer of assets without appropriate documentation and without meaningful arms-length consideration.

**MARITIME ATTACHMENT**

62.     Non-party  garnishee Arm & Hammer Animal Nutrition / Arm & Hammer, LLC is located within this Judicial District in Princeton, New Jersey and is  believed to be holding or

in control of property in the form of money, funds, or credits due and owing to the Defendant(s). (**Exhibit 3**.)

63.     These funds and/or credits are believed to be due and owing to Defendant Sonada as a result of Sonada / Agribusiness' role as distributor of Arm & Hammer products in Morocco.

64.     Arm & Hammer is believed to be in control of funds and / or credits due and owing to the Defendants as a result Sonada / Agribusiness' role as distributor in Morocco.

65.     Plaintiff has reason to belief that property in the form of funds or account credits may be in the hands of Arm & Hammer Animal Nutrition in this Judicial District since their exclusive Morocco distributor for their products appears to be Sonada / Agribusiness.  Following from Sonada's role as exclusive Morocco distributor, funds may be due owing from Arm & Hammer Animal Nutrition to Sonada.

66.     If Arm & Hammer Animal Nutrition owes Agribusiness or Sonada any monies for their distribution services, any debts for product not yet delivered, or hold any assets of theirs such as account credits, this property is subject to maritime attachment under Rule B as security against which to enforce a potential arbitration award.

67.     Plaintiff seeks security for its now pending London Arbitration against Agribusiness DMCC and Agribusiness Savannah.  As described above, Sonada's corporate form has been abused to the extent that it should be treated as one and same Agribusiness United and its owner, Defendant Abderrahim Abou el Ouafa.

68.     As best as can now be estimated, Plaintiffs expect to recover the following amounts in London Arbitration:

A.     Value of head owners' indemnity claim against Pola:     $4,987,282

B.     Outstanding freight and demurrage:     $36,029.83

| C. | Interest (4.5 % compounded quarterly): | $470,305.64 |
|----|----|----|
| D. | Costs, and Attorneys' Fees awardable under English law: | $200,000 |
| E. | Total: | **$5,693,617.47** |

69.     Defendants cannot be found within the district within the meaning of Supplemental Admiralty Rule B.

70.     As demonstrated by the attached affidavit, Plaintiff has attempted to search for the Defendants in this Judicial District, but has been unable to locate any offices or other conditions that would subject Defendants to being "found" within the District.

71.     The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District including but not limited to ARM & HAMMER ANIMAL NUTRITION, ARM & HAMMER, LLC or any variant of ARM & HAMMER holding funds or other property which are believed to be due and owing to the Defendants.

72.     The Plaintiffs seek an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any property of the Defendant held by ARM & HAMMER ANIMAL NUTRITION, ARM & HAMMER, LLC or any variant of ARM & HAMMER or any other garnishees within the District for the purpose of obtaining security for the London Arbitration proceedings now underway.

**WHEREFORE**, Plaintiffs pray:

A.      That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Compliant, failing which default judgment be entered against them in the sum of **US $5,693,617.47**

B.      That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, funds, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **US $5,693,617.47** belonging to, due or being transferred to, from, or for the benefit of the Defendants AGRIBUSINESS UNITED DMCC, AGRIBUSINESS UNITED SAVANNAH LOGISTICS LLC, SONADA AGRO LIMITED, SONADA, SONADA AGRO LIMITED (UK) LLC, SONADA NUTRITION COMPANY, and ABDERRAHIM ABOU EL OUAFA including but not limited to such property as may be held, received or transferred in Defendants' names or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of ARM & HAMMER ANIMAL NUTRITION ARM & HAMMER, LLC or any variant of ARM & HAMMER or any banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Complaint.

C.      That pursuant to 9 U.S.C. §§201 et seq. this Court recognize and confirm any arbitration award or judgment in Plaintiffs' favor against the Defendant as a judgment of this Court;

D.      That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

E.      That the Plaintiff have such other, further and different relief as the Court deems just, proper and equitable.


Dated: December 7, 2017                    By:      _____/s/Timothy J. Nast_____
                                                    Timothy J. Nast
                                                    Tisdale Law Offices, LLC
                                                    60 East 42nd Street Ste. 1638
                                                    New York, NY 10165
                                                    Tel: 212-354-0025
                                                    Fax: 212-869-0067
                                                    tnast@tisdale-law.com

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby certify that this request is not the subject of any other pending court action, or of any pending arbitration or administrative proceeding, and that at this time Applicants are not aware of any other parties that should be joined in this matter.  As discussed in the Verified Complaint, the underlying claims for which maritime attachment / security are sought are being arbitrated in London, England.  I certify that the foregoing statements by me are true and correct to the best of my knowledge, information and belief.  I am attorney for the Plaintiff and am making this certification because the Plaintiff is not located within this judicial district.

Dated: December 7, 2017

By:  _____/s/Timothy J. Nast_____
Timothy J. Nast
Tisdale Law Offices, LLC
60 East 42nd Street Ste. 1638
New York, NY 10165
Tel: 212-354-0025
Fax: 212-869-0067
tnast@tisdale-law.com

## ATTORNEY'S VERIFICATION

State of Connecticut     )

                           )    ss.:    Southport

County of Fairfield        )

1. My name is Timothy J. Nast.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney at Tisdale Law Offices, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      December 7, 2017
              Southport, CT

_____
Timothy J. Nast